Marshall, C. J.
 

 These canses, heard and decided upon a single record, were formerly submitted to this court upon motion to strike matter from the answer (115 Ohio St., 607, 155 N. E., 138), and, those motions having been overruled, relators have filed replies, and the case is now submitted upon the pleadings, the evidence, and arguments of counsel.
 

 The former opinion of this court stated many facts and declared certain legal principles which will not be again discussed in this opinion, but they will be reaffirmed and adopted by reference.
 

 Upon consideration of the motions to strike matter from the answer, all those allegations were taken as true. The reply has made denials of many of them. By the reply it is alleged, as supplemental
 
 *192
 
 matter, that, since the decision of this court upon the motions, the contracts between said companies and the said E. J. Brookhart, whereby he was paid a salary of $12,500 by each of said companies, has been canceled by the voluntary action of the said Brookhart, and that from and after March 1, 1927, by contract of that date, the salary of the said Brookhart has been fixed by agreement with said two relator companies and the Mercer Casualty Company at $15,000 per annum; said salary being apportioned among the three companies according to their respective premium incomes. Said companies admit that approximately $3,500 has been paid by them in the expense of this litigation. The reply further admits that the Mercer Casualty Company was incorporated February 8, 1926, as a stock company, with a capital of $100,000, and that that company occupies the same office building with the relator companies, and that it is officered by practically the same officers, but denies that it was intended to be a competing company to said relator companies. The reply further admits that certain policies of the Mercer Casualty Company were issued to persons who had been policyholders of said relator companies, but that the same were issued at the request of said policy-holders, in some instances on account of the pending litigation, and in other instances because they preferred to be insured in a stock company. While the reply does not specifically admit, it does not deny, the allegation of the supplemental answer wherein it is asserted that such premiums amount to approximately $7,000. The reply further states that the Mercer Casualty Company was incorporated solely
 
 *193
 
 out of fear that the superintendent of insurance would not renew the license of the relator companies. The reply further alleges that the manager contract, or general agency contract, which has heretofore been determined by this court to be an amendment of the' by-laws of said companies, was filed with the superintendent of insurance' on April 23, 1918, and that the same was approved in writing by him on April 25, 1918; said approval having been made by the predecessor in' office! of the respondent in this case.
 

 The reply contains further allegations of successive examinations and reports to the superintendent of insurance from April, 1918, to the year 1926, and that the general agency contract with Brookhart formed a part of those reports, and thát said successive reports were approved by' the predecessors in title of the present superintendent. The reply admits the relationship between E. J. Brookhart, Dora M. Brookhart, and C. M. Montgomery, and that these three parties composed the majority of the board of directors of said insurance companies. The reply contains many other allegations, but the foregoing constitute the issues which are decisive of the controversy.
 

 Upon leave given by this court, certain policyholders filed answers to the original cross-petition of the respondent, in which they deny that the methods of the insurance company, as alleged in respondent’s cross-petition, will be hazardous to its members, to policyholders, and the public, and the policyholders join in the prayer of the petition of relators. It is significant in this connection that only a limited number of' policyholders have
 
 *194
 
 intervened out of a total number of more than 36,000 holders of policies. At the time leave was given to the few policyholders to intervene, a suggestion was made from the bench that it would be more helpful to the court that a general meeting of policyholders be called and the court favored with an expression of the views of the policyholders generally. Such action has never been taken.
 

 Since the beginning of this action and during its progress, the respondent Harry L. Conn has resigned as superintendent, and is at this time only a nominal party to this proceeding. The real respondent is his successor, William C. Safford.
 

 A large volume of testimony has been taken, which has been examined by this court, and it is proper to observe that it consists in large part of the testimony of alleged experts on the question of the value of the services of Mr. Brookhart, and a very large volume of testimony not relative to any issue in the case. Some of the time of counsel has been occupied in endeavoring to develop matters of a personal nature, which was unnecessarily offensive, omission of which would have reflected credit upon counsel seeking to advance the same.
 

 We deem it expedient to make certain findings of fact material to the inquiry, as follows:
 

 (1) The services of Mr. Brookhart during the entire period of his connection with each and all of said companies has not been characterized by any new inventions or progressive ideas in insurance which were not already known and utilized in the insurance business.
 

 (2) The two relator mutual companies and the
 
 *195
 
 Mercer Casualty Company are competitors in the insurance business, although occupying the same office and officered and managed by the same officers and agents.
 

 (3) The compensation paid to and received by Brookhart under the general agency contract with the two relator companies is grossly in excess of the compensation ordinarily paid by insurance companies for like services.
 

 (4) The average compensation paid to officials of the same character as Brookhart by other mutual insurance companies organized and doing business in Ohio does not exceed $9,000 per annum, and the. highest salary paid by any Ohio mutual fire insurance company to its highest paid executive officer is $20,000 per annum, and the premium volume of said company is approximately ten times as great as the aggregate premium volume of relator companies.
 

 (5) Licenses to do business were issued to each of said companies from the time of their organization until and including the year 1925.
 

 (6) The general agency contract was first entered into with the National Mutual Insurance Company on December 7, 1917, which awarded to Brook-hart 35 per cent, of the gross premiums, out of which he was to pay the costs of management and operation of the company, including all agents appointed by him, except the salaries of the directors of the company, the salaries and fees or commissions of the officers of the company, and such assistants as may be employed by the board of directors for such officers, the rents of the general offices of the company, attorney fees, taxes, and.
 
 *196
 
 losses on insured property. That was by its terms to extend for the period of twenty years from January 1, 1918, and extended to Brookhart, his heirs and assigns. Upon the organization of the Celina Mutual Casualty Company in 1920, a similar contract was made with that'company. On January 3, 1921, the contract was modified, whereby Brookhart was required to pay expenses and costs of the management operation of said company instead of expenses and costs of the management
 
 cmd
 
 operation of said company, and Brookhart was further exempted from the payment of any expenses and attorney fees incurred in connection with losses.
 

 (7) There is a sharp conflict in the testimony as to the net compensation received by Brookhart during the years 1920, 1921, 1922, 1923, 1924, and 1925. The figures submitted by Brookhart show that for those years he received a total net compensation from the two mutual companies of $190,107.28. The testimony of respondent shows that he received a much larger sum than that for those years. We shall adopt the figures submitted by Brookhart, except that for the year 1925 we find that Brookhart during that year drew $12,000 as salary, which is not.shown in the exhibit submitted by him as having been credited to him. That exhibit does show that the sum of $12,000 for salary for Brookhart was credited to the expense account of the companies, and the figures shown by him are therefore augmented by said sum of $12,000, which results in finding that he received for those years the sum of $202,107.28. The maximum aggregate premium volume of all three com
 
 *197
 
 panies has not in any year exceeded the sum of $600,000.
 

 (8) Mr. Brookhart having voluntarily entered into a contract with the companies under date of March 1, 1927, whereby he was to receive the sum of $15,000 per year for all services to the three companies, to be apportioned among them according too premium volume, we find that his labors were not more onerous and his services not more valuable at any previous time than they were at the date of that contract. We therefore find that $15,000 per year is adequate compensation for services during all previous years.
 

 (9) The Mercer Casualty Company is an insurance company organized under Ohio laws having capital stock, and E. J. Brookhart owns 600 shares of a total of 1,000 shares in said company. The constitution and by-laws of both relator companies contain a provision relating to the election of directors, as follows:
 

 “Said directors shall be elected by the members at the annual meeting of the company; no person shall be elected as a director unless his or her name as a candidate for director shall have been filed with the secretary of the company sixty days prior to the date of said annual meeting.”
 

 (10) The by-laws of each of said companies contain the further provision, as follows:
 

 “Ten members present shall constitute a quorum for the transaction of business. No proxy may be used at said annual meeting unless the same shall have been filed with the secretary at least ten days prior to the date of the annual meeting, provided,
 
 *198
 
 however, that no proxy shall be in favor of or nsed by any person except a member of the company.”
 

 (11) The examinations and reports of snch examinations which were filed in the office of the superintendent of insurance prior to and including February 11, 1919, were approved by the superintendents of insurance then in office. The reports made subsequently to February 11, 1919, and which were filed in the office of the superintendent of insurance, were not approved by the superintendents in office at the time of filing such reports.
 

 (12) No report of said insurance companies filed after February 11, 1919, containing any information concerning the general agency contract, was ever specifically approved, and no testimony appears in this record tending to show that the attention of any superintendent of insurance was ever called to the matter of said general agency contract, after that date.
 

 (13) The Celina Mutual Casualty Company was organized February 16, 1920, and on February 23, 1920, entered into a contract with Brookhart containing the same terms and conditions as the contract theretofore made between the National Mutual Insurance Company and Brookhart, under date of December 7, 1917. An examination of the' Celina Company was made by examiners of the state insurance department on December 31, 1920, and the report of that examination filed in the office of the superintendent of insurance incorporated the contract with Brookhart. The insurance commissioner did not approve that report or take any action upon it. Neither does the record show that his attention was called to the matter of the general agency con
 
 *199
 
 tract. Another examination was made of the National Mutual Company on July 31, 1922, but the report of that examination contains only a meager reference to the general agency contract, and no reference whatever to the supplement to that contract, under date of January 3, 1921. No examination of either of said companies was thereafter made until 1925, and the attention of the department of insurance was not at any time called to the supplemental contract of January 3, 1921, until the year 1925.
 

 A report of an examination of the Celina Casualty Company, under date of July 31, 1922, contains a reference to the Brookhart contract in even more meager terms, without approval.
 

 (14) Brookhart advanced to the National Mutual Insurance Company sums of money necessary to enable it to comply with the cash guaranty fund requirements of the law, as permitted by Section 9607-12, General Code, the sums so advanced and not repaid amounting to $40,000, and likewise advanced to the Celina Mutual Casualty Company, for like purposes, the sum of $35,000.
 

 Upon the foregoing facts, the rules and principles of law applicable have in large part been stated in the syllabus of the former decision of this court upon the motions. Applying the first syllabus of that decision to the facts herein found, the approval of the report of the examiners made by the superintendent of insurance, in 1919, was a compliance with the requirement of submitting by-laws to, and obtaining the approval of, the superintendent of insurance. That approval will be held to be valid and binding to December 31, 1919, the end of
 
 *200
 
 the calendar year in which the approval was given. No approval having thereafter been given in any subsequent report made upon either company, and the supplemental contract of January 3, 1921, never having been brought to the attention of the department until 1925, that supplement to the agreement never did become a valid amendment to any by-law. That supplement having been entered into as a modification of the original general agency contract, and having materially changed the same to the benefit of the policyholders, it must be held to have rendered the entire contract invalid from and after the date of the last approval by the department of insurance, which has heretofore been stated as of December 31, 1919.
 

 It is argued by counsel for relators, that, inasmuch as the superintendent of insurance has been given the power and duty to judicially approve by-laws, when submitted to him for approval, his successor may not thereafter set aside his approval. Upon this point counsel have cited the case of
 
 United States
 
 v.
 
 Bank of the Metropolis,
 
 40 U. S., (15 Pet.), 377, 10 L. Ed., 774, and other cases of the same tenor. Upon the authorities cited, and especially upon the authority of
 
 United States
 
 v.
 
 Bank,
 
 we have reached the conclusion that the approval given to the report of 1919 validates all payments of compensation to Brookhart to the end of the year 1919, and that, by reason of the want of approval subsequent to that date, any compensation for services in excess of a reasonable compensation is subject to the orders of the superintendent of insurance.
 

 Paragraph 3 of the syllabus in the former decis
 
 *201
 
 ion of this court, which is hereby affirmed, declares the payment of excessive and exorbitant salaries to officers and agents of a mutual insurance company to be an unsound practice and a wrong upon the policyholders and members of such company, and further declares it to be the right and the duty of the superintendent of insurance to require restitution of excessive and exorbitant amounts so paid. Having found that the sum of $15,000 is an adequate salary to be paid to Brookhart for the services shown to have been rendered by him, it follows that any excess above that sum, from and after January 1, 1920, was wrongfully paid, and should be restored to the treasuries of the insurance companies.
 

 It has already been decided by this court in the ease of
 
 State ex rel. European Accident Ins. Co.
 
 v.
 
 Tomlinson, Supt. of Ins.,
 
 101 Ohio St., 459, 129 N. E., 684, as follows:
 

 “Section 617, General Code, imposes continuing powers upon the superintendent of insurance, requiring him to. see that the insurance laws are enforced. And if he discovers that a licensee is contracting reinsurance without having made the deposit required by Section 9510 (2), General Code, the superintendent, under authority of the former section, has power to revoke the license.”
 

 The above-quoted paragraph of the syllabus in that case is supported by reasoning in an opinion written by Jones, J., and concurred in by every member of the court as then constituted. That principle declared to be sound then is equally sound now. It is the right and the duty of the superintendent of insurance to withhold the renewal
 
 *202
 
 of the license in this case until full restitution has been made.
 

 It has been argued that these insurance companies should be permitted to conduct their corporate affairs without interference on the part of the superintendent of insurance. This argument has been met in the former decision of this court upon the motions.
 

 It has further been argued that the policyholders are satisfied with the general agency contract, and two or three policyholders have intervened for the purpose of giving expression to their notions on that subject. If, instead of this expression having been given by only a few policyholders, it had developed in the course of this hearing that an overwhelming majority of the policyholders preferred to pay the compensation agreed to be paid under those contracts, their views and wishes would find favor in this court. In the absence of that expression, we can only conclude that they have felt that their individual interests were not sufficiently large to justify the expense of investigation and redress.
 

 Mutual insurance has acquired a status of usefulness and a reputation for service in the insurance world. It has the sanction of legislation and has resulted in the majority of instances in reducing the cost of insurance. It has resulted in a multitude of other instances in disaster to persons who believed their risks were conservatively covered. Between these extremes of experiences, it has become established that governmental safeguards are imperative. The superintendent of insurance is by statute made the guardian and the conserva
 
 *203
 
 tor of the rights of the multitude of insured, whose interests are large in the aggregate, but whose separate and individual rights are of too small value to warrant any expensive efforts toward investigation or redress. The transactions shown by this record are such that, if this court should award a writ of mandamus, and compel' the issuance of the renewal licenses, such action would be construed by mutual insurance companies as giving unlimited latitude in the matter of making contracts for payment of salaries, and would be construed as denying to the superintendent of insurance supervision over the conduct and management of mutual insurance companies, and might eventually result in exploitation of the insuring public to the permanent detriment and damage of mutual insurance enterprises.
 

 It has been urged in argument that Brookhart is a man of unusual business attainments. The same might truthfully be said of very many public officials who are drawing salaries which are only a fraction of the amount they could earn in private business enterprises. This argument does not meet the situation. Insurance has been by legislation impressed with a public use, and mutual insurance furnishes no field for the employment of business sagacity with any expectation that such services must be compensated in competition with the demand for like services in the business world.
 

 It has further been urged in argument that lower insurance rates are offered by these relator companies than by other mutual insurance companies in the same field. It is urged with equal insistence by counsel for respondent that, while these com
 
 *204
 
 panies have lower rates than many companies, there are still other companies whose rates are lower than relators. We are not impressed with this argument, and do not feel that it is material to inquire into that feature of the case. It is absolutely certain and beyond question that rates must necessarily be higher because of paying exorbitant salaries than they would otherwise be, and policyholders in a mutual insurance company are entitled to have the benefit of the reduction.
 

 We are taking no action at this time upon the cross-petition of the respondents praying for dissolution of the relator companies. It does not appear that either of relator companies has so far willfully disobeyed any order of the superintendent of insurance and there has apparently been an understanding between relators and the superintendent of insurance that all matters would remain in
 
 statu quo
 
 pending a determination of the issues of this litigation. The issues made by the cross-petition can be determined when there has been a definite disobedience of the orders of the superintendent of insurance or when it otherwise appears that either of relator companies is acting in known violation of law.
 

 We find it unnecessary therefore at this time to interpret the provisions of Section 634-2, General Code.
 

 It has been urged that, inasmuch as the licenses issued by the superintendent of insurance to these relators during each of the years from 1920 to 1925 recited that relators had “fully complied with the laws,” their acts, proceedings, and records cannot thereafter be questioned. To this argument it
 
 *205
 
 may be answered that the violation of express statutory provisions is not the only subject-matter of administrative redress. The unsound practice of permitting the payment of exorbitant salaries is equally subject to redress. It should further be answered that estoppel cannot be pleaded against the superintendent of insurance. If relators have acted wrongfully, or without legal warrant, the failure of the superintendent of insurance to correct an evil during one year does not justify a wrongdoer in pursuing his wrongful course. He cannot be said to have been misled to his prejudice.
 

 It follows from the foregoing that the company should not be put to any expense on account of this litigation. The costs of this action as well as the attorney fees for services of counsel representing relators should be paid by Mr. Brookhart. The costs of these suits will of course be taxed against the companies, but in making settlement with the companies it will be the duty of the insurance commissioner to require restitution to the companies of all such costs and counsel fees.
 

 The relators have utterly failed to show a clear legal right to the extraordinary writ of mandamus. The respondent has completely established his defense. The writ will be denied.
 

 Writ denied.
 

 Day, Allen and Kinkade, JJ., concur.
 

 Robinson, Jones and Matthias, JJ., dissent.