Court of Common Pleas of Franklin County.

MUTUAL BENEFIT LIFE INS. CO. V. YOUNGER, SUPT.

Decided February 26, 1931.

*Vorys, Sater, Seymour & Pease,* for the plaintiff.

*Gilbert Bettman,* attorney general, *Raymond S. Powers,* special counsel, and *B. W. Gearhart, amicus curiae,* for the defendant.

LEACH, J.

The petition alleges, in substance, that the plaintiff, The Mutual Benefit Life Insurance Company, is a corporation organized under the laws of the state of New Jersey, is authorized to transact the business of life insurance and disability insurance and duly licensed by the Superintendent of the State of Ohio to transact said insurance business in this state. That in order that holders of life insurance policies of said company may be indemnified against the loss of earned income by disease or accident to the extent of the premiums on such life insurance policies and also a stipulated monthly income, said company has been and is issuing and, unless prevented by defendant, intends to issue in this state, to such of its policyholders as may desire the same, one of its two forms of disability insurance policies providing for such indemnity.

In the policy designated as Form S-1, said company, in consideration of the premium to be paid by the insured agrees to the extent therein set forth to indemnify the insured against loss of earned income by reason of accidental bodily injury or sickness, and that upon proof within one month after the due date of any premium payable under the provisions of such designated policy of life insurance, that the insured under such policy of life insurance has been totally disabled by reason of accidental bodily injury or sickness, as set forth in such disability policy, said company, during the continuance of such disability, will pay a sum equal to the premiums then due on such disability policy and on such policy of life insurance by crediting the said premiums in the accounts of said company, and that such credits of such premiums shall continue such disability policy and such policy of life insurance for the same time and with the some force and effect as though said payments had been paid in cash when due.

The form of policy designated as Form S-2, providing for the payment of premiums and also monthly income,

contains the said provisions in said policy designated as said S-1, and also the agreement of said company to pay a monthly income of a stipulated amount while the insured under such designated policy of life insurance shall be so totally and permanently disabled.

Both of said forms of disability policies contain the following clause:

"The insured will be regarded as totally disabled when by reason of accidental bodily injury or by sickness, his average monthly earned income for a period of four months has not exceeded one-fourth of his former earned income (averaged monthly for the twelve months immediately preceding such four months) and such disability will be regarded as permanent while the earned monthly income of the insured, on account of such injury or sickness, does not exceed the said one-fourth."

On March 8, 1929, said company filed said two proposed forms of policies with the Superintendent of Insurance of Ohio. On March 12, 1929, said Superintendent of Insurance notified said company that he had filed said forms of disability policies, and he did not, in said notice or otherwise, disapprove of either of said forms.

On November 15, 1929, the Superintendent of Insurance addressed a written communication to the plaintiff, a copy of which is attached to the petition, marked Exhibit "B," disapproving said forms and declaring it his purpose to make effective the following definitions of total disability:

"(1)   That total disability is incapacity (resulting from bodily injury or disease) to engage in any occupation for remuneration or profit.

"(2)   That total disability which has been continuous for a period specified in the provisions (not less than four months nor more than one year) shall be presumed permanent."

said definitions having been agreed upon and recommended by the National Convention of Insurance Commissioners at the September, 1929, meeting of said body held at Toronto.

Plaintiff avers that neither of said forms of policies so designated "Form S-1" and "Form S-2" violates any provision of law in this state; that defendant, as such Super-

intendent of Insurance, has no authority under the laws of this state to prescribe the forms of such policies or to regulate, control or interfere with the issuing of said disability policies by plaintiff or to declare the same unlawful or by any action or declaration interefere with the right of plaintiff to issue or its policyholders to accept said disability policies.

Wherefore, plaintiff prays for an order enjoining the defendant from certifying his disapproval of said forms of disability policies and from declaring, proclaiming or publishing his disapproval thereof and from declaring, announcing or publishing that it is unlawful for said company to issue said policies or either of them in this state.

In his answer the defendant says that he is not informed as to the powers and authority of the plaintiff company under the laws of the state of New Jersey, to transact the business of insurance as shown by the provisions of the policies attached to plaintiff's petition, and prays that plaintiff be required to establish by competent evidence all the conditions precedent to the exercise of the authority, if any it has, to issue policies of insurance containing the said provisions.

This proof the plaintiff has met by its Exhibits No. 22, No. 23 and No. 24.

Further in his answer, defendant denies that, as Superintendent of Insurance of the state of Ohio, he has ever approved the form or forms of insurance containing the provisions set forth in plaintiff's petition, and says further that said insurance policy provisions are unlike those issued or which have ever been issued by any other insurance company; and that there is no experience table upon which can be based the cost of the issuance and sale of policies containing the provisions set forth in plaintiff's petition.

Defendant denies that the aforesaid provisions, construing all their terms and conditions together, constitute disability insurance within the statutes and laws of Ohio. Defendant further alleges that the issuance and sale of policies of insurance containing said provisions are not authorized by the law within the state of Ohio, but are prohibited.

Defendant further alleges that the plaintiff company is issuing policies containing the provisions referred to for the sole and exclusive purpose of inducing the purchase of policies of life insurance issued by the plaintiff company and for no other purpose whatsoever; that said plaintiff company is issuing policies containing such provisions for a proportional part of the total premium charged for the entire policy, which proportional part is less than the cost to said plaintiff company of the benefits granted thereunder; that the benefits paid under said provisions will inevitably, if such practice is not already indulged in, be paid from the reserves of the plaintiff company accumulated from premiums and surpluses received from policy-holders whose policies do not contain the provision set forth in plaintiff's petition, and that such holders will be thereby deprived of dividends which they would otherwise receive; that said provisions, due to the looseness of their construction and their possible operation upon the happening of events wholly foreign to the results of sickness or accident, will subject the capital and surplus of the plaintiff company to the payment of unjustified, fraudulent and excessive claims, impairing the ability of the plaintiff to pay just claims on all its policies.

Defendant further alleges that said provisions are inserted in policies supplementary to and as a part of life insurance policies, and not otherwise; that said provisions are, in their proper construction, unknown to the statutes and laws of Ohio and accordingly their issuance is prohibited, and that the issuance thereof constitutes an unsound and extravagant practice which will eventually result in the insolvency of the plaintiff company resulting in severe losses to a great number of policy-holders in this state.

By way of reply the plaintiff denies each and every allegation of the answer not alleged and admitted to be true in the petition. It is admitted that such policies containing the provisions in question are issued by plaintiff only to holders of policies of life insurance with said plaintiff company.

This litigation arose through the adoption by the State

Superintendent of Insurance of a definition of "total disability" adopted by the National Convention of Insurance Commissioners at their meeting held in Toronto, Canada, in September of 1929. In their report to the Convention, the committee having said matter in charge said, among other things:

"Total disability has been defined in accordance with the definition now in general use. The experience of most companies with a definition substantially similar to the one proposed, has indicated that the courts will require this definition to be interpreted reasonably in a spirit of fairness to the insured and that, guided by such experience, the companies will be able to continue to apply this definition to actual cases without undue liberality on the one hand or undue strictness on the other. One company has recently received the approval of practically all of the insurance departments for a clause recognizing a 75 per cent. loss in earning capacity as total disability. The committee express no opinion as to whether such a provision would represent sound underwriting or would provide for benefits for partial rather than total disability, because they feel that this provision would render practically impossible the general uniformity which was called for under a resolution of the National Convention of Insurance Commissioners."

The following is also taken from said report:

"The two committees unanimously favor departmental rulings instead of legislation for the purpose of putting the standard provisions into effect. This procedure would secure greater flexibility, thus permitting changes in the future to meet any new conditions that may arise."

"The indications are that in a great majority of the states these requirements can be made effective under the existing law. The committees recommend that, in the few states in which such requirements cannot be made effective by departmental ruling, enabling legislation be sought."

The central thought of the committee's recommendation, of the convention, and likewise of the superintendent of insurance of Ohio, was, I think, that uniformity might be obtained and from this an experience table built up that would be more satisfactory than any now existing. The central question in this case really is whether Ohio is one of the states where such provision may be made effective

by departmental ruling or whether enabling legislation on the part of the General Assembly is necessary. However, various questions have been raised in the briefs and it will be necessary to deal with them. These issues must be determined from the evidence and from an examination of the extent of the powers of the superintendent of insurance of Ohio and must be approached in the light of the general rule that:

"Public officers have no power except such power as expressly given or is to be implied from the powers that are expressly given." *State, ex rel.,* v. *Commissioners,* 8 N. P. (N. S.), 281; *Ireton* v. *State, ex rel.,* 12 C. C. (N. S.), 202; affirmed in *Ireton* v. *State, ex rel.,* 81 Ohio St., 562.

In a case dealing with the powers of Public Utilities Commission the court said:

"The powers of Public Utilities Commission are conferred by statute and it possesses no authority other than that thus vested in it." *Cincinnati* v. *Public Utilities Commission,* 96 Ohio St., 554.

By Section 617 of the General Code of Ohio:

"The superintendent of insurance shall see that the laws relating to insurance are duly executed and enforced."

By Sections 628 and 629 of the General Code of Ohio the superintendent is authorized to take appropriate action to prevent insurance companies from becoming insolvent or if insolvent from continuing to do business in Ohio. In this connection in *State, ex rel.,* v. *Conn,* 115 Ohio St., 607, it was said:

"The superintendent must be held to have some implied powers necessary to carry out the purposes stated in the express provisions of the statutes. It is not necessary that the company should have become actually insolvent; it is sufficient that the practices tend directly and inevitably to a situation calculated to render the business hazardous to its policyholders. It is not necessary that the superintendent should wait until reserves are actually impaired or insolvency has become an established fact; it is the duty of the superintendent to resort to preventive measures when improper practices are being employed." From opinion, page 625; see also, *State, ex rel.,* v. *Conn,* 117 Ohio St., 190.

While it is averred in the answer in substance that the premiums charged for such disability policies by the plaintiff were inadequate, which would inevitably result in the dipping into the reserves built up by the strictly life end of the business, the court is not of the opinion that such averment has been sustained by the testimony. The Superintendent of Insurance, upon the witness stand, testified that he had not made any specific examination of plaintiff's experience under the company's forms of disability policies. He further testified that before taking the action in question he did not acquaint himself with the rates of the plaintiff company as to disability insurance nor make a comparison of such rates with other companies. He had heard that the plaintiff company's rates were higher than other companies and had, in a general way, been advised that the reports of other companies showed that they had so lost large sums of money by the practice in vogue before the adoption of the rule promulgated by the commissioner in this case. The court is of the opinion that upon the undisputed testimony of the company's witnesses that, while said company has had no long experience with such policies, that they have not yet involved themselves in any situation where it has become necessary to dip into the reserves accumulated in life policies in order to take care of losses on the disability policies, nor is the court of the opinion that any showing has been made that there is any reasonable probability that such will be the result.

It may be observed in passing that if future examinations of the rates charged by said company show such a situation or the imminence of such a situation, that the superintendent of insurance, when such situation develops, if at all, would have power under the statutes and the decisions heretofore referred to, to intervene at that time by appropriate action.

In the answer, defendant denies that the provisions of the disability policies in question, construing all their terms and conditions together, constitute disability insurance within the statutes and laws of Ohio; defendant further alleges that the issuance and sale of policies of

insurance containing said provisions are not authorized by law in the state of Ohio but are prohibited.

Section 665 of the General Code, applying to all insurance companies, provides:

"No company, corporation, or association, whether organized in this state or elsewhere, shall engage either directly or indirectly in this state in the business of insurance, or enter into any contracts substantially amounting to insurance, or in any manner aid therein, or engage in the business of guaranteeing against liability, loss or damage, unless it is expressly authorized by the laws of this state, and the laws regulating it and applicable thereto, have been complied with."

The plaintiff contends that Section 9385 authorizes such insurance, while the defendant claims that the insurance in question is not authorized by said section. Said section provides:

"No company, organized under the laws of this state, shall undertake any business or risk, except as herein provided, and no company, partnership or association, organized or incorporated by act of congress, or under the laws of this or any other state of the United States, or by any foreign government, transacting the business of life insurance in this state, shall be permitted or allowed to take any kind of risks, except those connected with, or appertaining to making insurance on life or against accidents to persons, or sickness, temporary or permanent physical disability, and granting, purchasing and disposing of annuities * * * *."

Defendant contends that the proposed forms of policies provide rather for "income insurance" than for disability insurance and cite as a practical illustration the supposition that "A" having one of plaintiff's policies containing the disputed provisions, earns in 1929 an income of $25,000 from the sale of automobiles for which he has had an agency; in 1930 "A" failed in business and during that year received no earned income whatsoever. More than twelve months after "A's" failure in business and more than twelve months after he had received any earned income, he met with an accident whereby he was permanently disabled and invalided. Under such a state of facts "A" could recover no benefits under the alleged dis-

ability policy of plaintiff for the reason that he had no earned income during the twelve months' period of 1930 and thus did not come within the definition contained in the policy. The complete physical disability would be there, but the element of loss of earned income would not be present because he had had no earned income. Defendant contends, therefore, that in certain cases of which this is an illustration said insurance is not disability insurance. It will be seen that in such a case payments would be made under the policies in question only where two contingencies were present: first, physical disability; second, presence of earned income during the prior twelve months' period.

On the other hand, plaintiff claims that inasmuch as under the policies in question there must be physical disability before there can be recovery, that such policy is none the less disability insurance because it calls for the presence of another element before payments are made.

The company contends that it may classify its risks according to the kinds against which it will insure, that it may require the presence of another element, namely, earned income, before it will pay on such disability, that it may classify its policyholders, restricting its insurance to those it considers acceptable, and refusing its insurance to those the company considers objectionable and, therefore, not acceptable.

The company further contends that it is unreasonable to claim that no disability insurance policy is valid or authorized by law unless it affords complete, unlimited, unconditional, unqualified coverage in event of disability, that this kind of coverage is not found in any kind of insurance, whether it be life, disability, fire, automobile, tornado, or other insurance, and cite that under all Ohio standard forms of life insurance policies (Section 9412, General Code, etc.) is a paragraph entitled "Conditions," "(The policy may here provide for restrictions of liability by reason of travel, occupation, change of residence and suicide. These restrictions, except such as refer to military and naval service in time of war, must be applicable

only to cases where the act of the insured provided against occurs within two years after the issuance of the policy.)" The defendant contends that such policies are none the less life insurance policies, notwithstanding the fact that they may contain certain conditions of non-liability in case of death.

While there have been numerous cases construing disability policies, no cases have been cited construing the extent of the power granted to an insurance company under a section such as 9385. Under Section 9385 the plaintiff company is authorized to write policies "connected with or appertaining to making insurance on life or against accidents to persons, or sickness, temporary or permanent physical disability." Since the language is broad, *"connected with* or *appertaining to* making insurance * * * against * * * temporary or permanent physical disability" and since the court believes that the proposed insurance is at least "'connected with" temporary or permanent physical disability, the court does not find that he can give to this enabling statute such a limited or restricted definition as is contended for by the defendant particularly in view of the fact that conditions and limitations have by long continued practice been construed to be authorized under the general insurance statutes.

It is also contended, in effect, that the permission granted in Section 9385 to make insurance against "disability," imports by the very word used, total disability. That disability imports a total loss of ability, that there are no degrees of disability, and that any impairment of physical capacity less than total is not, in the nature of things, disability at all, and that, therefore, the type of insurance sought to be written by the plaintiff is not authorized by the statutes of Ohio.

As heretofore pointed out, the language of Section 9385 authorizes such companies to make insurance "against accidents to persons or sickness, temporary or permanent physical disability." The losses proposed to be covered by the policies are against disability "by reason of accidental bodily injury or by sickness." It appears that authority for such insurance is found not only in the word

"disability" but also in the words "accidents to persons, or sickness" and it would seem that if the authority granted by the one word "disability" standing alone should be limited to "total disability," that the whole authority granted in the language used, namely, "accidents to persons or sickness" when read in connection with the remainder of the language "temporary or permanent physical disability" would, in its entirety, be broad enough to grant authority to provide for payments in cases of partial disability resulting from "bodily injury or by sickness." It is doubtful that under the decisions the word "disability" should receive such a limited construction, but rather that it should be used in its commonly accepted sense. We commonly speak of a person as disabled, even though he may not be fully and totally disabled. The court is, therefore, not able to agree that the authority for the type of insurance proposed to be written is unauthorized on this account.

It is also urged that the writing of such insurance amounts to a rebate on the premiums established by the company for its co-existing life insurance policies. So long as the rates charged for the insurance in question are adequate and the court has already stated that, in his opinion, the evidence does not show that such premiums are not at this time adequate, I am unable to arrive at the conclusion that the provisions of the anti-rebate law are violated.

As heretofore stated in this opinion, probably the central thought of the insurance superintendent in providing the so-called standard definition for total disability was for the purpose of obtaining uniformity among the various insurance companies writing this class of business. After a review of all of the statutes cited I have been unable to find any statute which gives to the insurance superintendent of Ohio the power to make regulations relative to disability insurance for the sole purpose of securing uniformity among the policies written. If this end is desired or desirable it would seem that such authority should be granted by way of legislative enactment.

Section 9423 provides that:

"No policy of life insurance shall be issued or delivered in this state or be issued by a life insurance company organized under the laws of this state, until the form of the same has been filed with the Superintendent of Insurance; and after the Superintendent of Insurance shall have notified any company of his disapproval of any form, it shall be unlawful for such company to issue any policy in the form so disapproved."

It is contended by the defendant that the forms of policies of disability insurance being issued by the plaintiff company only to persons holding life policies with said company and being supplemental thereto are, in legal effect, life policies and cannot be issued if the forms thereof are disapproved by the superintendent. Whether this contention is sound is a matter of some doubt, but in the view the court takes of this case it is not of great importance insofar as the result of this action is concerned, unless it should be found that the superintendent, acting under this section, based his disapproval on grounds warranted by the law. In other words, the discretion of the superintendent to disapprove the form under Section 9423 would not be arbitrary, but would be required to be exercised reasonably and would have to be based upon a violation of the statutes.

Other arguments are presented but to review them would extend this opinion beyond reasonable limits.

The court is of the opinion that the statutes of Ohio authorize a life insurance company authorized to do business in Ohio to issue to holders of its life insurance policies supplementary policies by which it may indemnify against the loss of earned income by reason of disease or accident to the extent of the premiums on such life insurance policies and also a stipulated monthly income, and to provide that such disability exists "when, by reason of accidental bodily injury or by sickness, his average monthly earned income for a period of four months has not exceeded one-fourth of his former earned income (averaged monthly for the twelve months immediately preceding such four months)."

Such finding and opinion, however, does not dispose of this case for Section 9408, General Code, provides:

"No life insurance company doing business in this state * * * shall * * * use any name or title of any policy or class of policies misrepresenting the true nature thereof * * *."

The title to one of the policies in question, Form S-1, is as follows:

"Supplementary policy issued in connection with life insurance policy No. ———, providing for payment of premiums in event of total and permanent disability by reason of accidental bodily injury or by sickness as herein provided."

The title to policy Form S-2 provides:

"Supplementary policy issued in connection with life insurance policy No. ———, providing for payment of premiums and monthly income in event of total and permanent disability by reason of accidental bodily injury or by sickness as herein provided."

Now, concerning the provisions of the policies with these titles, it will be noticed,

1. That they are not necessarily against total disability—for they provide for 75 per cent. or more of disability.

2. They are not necessarily against permanent disability—for they are effective if disability continues for four months.

3. They do not provide for payment in the event of disability alone as expressed in the title—but only in event of disability plus a second contingency, viz., the presence of an earned income for the preceding twelve months.

Why mention one contingency in the title and not the other? To omit one and name the other not only makes the title misleading but constitutes a misrepresentation in the title.

The court does not here intend to suggest a hard and fast title which would meet the requirements of the statute just quoted, but does suggest the following as a possible title which would fairly meet the provisions of the statute:

"Providing for payment of premiums and monthly income in event of disability by reason of accidental bodily

injury or sickness as herein provided, and by reason thereof his average monthly earned income for a period of four months or more, has not exceeded one-fourth of his former earned income (averaged monthly for the twelve months immediately preceding such four months). No payments provided in event insured had no such earned income during said twelve months period."

A title like this, or one possibly better worded, omits the word "total" for it is a misnomer. The actual policy is against 75 per cent. or more disability. It omits the word "permanent" for the policy is apparently effective against four months or more disability. It inserts one of two elements necessarily present before the policy is applicable, omitted in the submitted title and used in the policy, namely, the presence of an earned income. The company contends that it may write policies of this character for partial disability, and that in attempting to do so it is not prohibited by Ohio law. The court agrees with this contention, but is of the opinion that where such policies are written they must be correctly labeled in view of Section 9408 heretofore quoted. It is to be noted with reference to said section that it applies not only to life insurance companies writing life insurance policies, but life insurance companies writing any policy or class of policies.

In the case of *Mutual Benefit Life Insurance Co.* v. *Commissioner of Insurance of Massachusetts*, attached to one of the briefs, it was held:.

"We think that the words 'total disability' as used in G. L. c. 175, s. 24, as amended, should receive a construction which is not narrow and technical, or, on the other hand, so free and liberal as to give a right which the words themselves do not import; but we cannot agree that the proposed definition of 'total disability' is a rule reasonably deducible from the decisions or one that is a reasonable expression of the authority given by the statute to define the phrase 'totally and permanently disabled.'"

It is true that the Massachusetts law provided that companies using such policies were required to define "what shall constitute total and permanent disability," and that the Ohio statute does not use the word "total." How-

ever, the defendant company does use the word "total" in its policy and does define the same, in a manner, to use the expression of the Massachusetts court, not "reasonably deducible from the decisions." In the body of its policies it defines "total disability" as a condition existing "when, by reason of accidental bodily injury or by sickness his average monthly earned income for a period of four months, has not exceeded one-fourth of his former income averaged monthly for the twelve months immediately preceding such four months." It defines "totally disabled" as 75 per cent. or more disabled, which, of course, is not total.

The court is inclined to the opinion that from the express provisions contained in Section 9408, General Code, prohibiting misrepresentation in the title of insurance policies, and from Section 617, General Code, which gives to the superintendent the power to see that the laws relating to insurance are enforced and from the definition of his implied powers contained in decisions of the Supreme Court of Ohio heretofore referred to, that the superintendent has implied, if not express power, to prevent the defining of something as total which is not total.

To summarize, the court is of the opinion that the plaintiff is authorized by the statutes of Ohio to write the general type and character of insurance proposed to be written in Forms S-1 and S-2 but that the same as now submitted to the insurance superintendent have titles unauthorized by the statute, and that certain revisions heretofore indicated in the body of the policy are necessary before they meet the provisions of the laws of Ohio; that the court is without power to enjoin the superintendent from disapproving a definition of "total" which obviously is not total, and from disapproving a definition of "permanent" which obviously is not permanent. This can be met by the company by dropping the adjectives "total" and "permanent" and using the word "disability" alone, defined as in Forms S-1 and S-2, but without characterizing such "disability" as either "total" or "permanent."

For these reasons alone, the finding and judgment will be for the defendant and the petition will be dismissed. Exceptions.